`                          IN THE UNITED STATES DISTRICT COURT
                            FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-00348-ZLW-KLM

JONATHAN W. WOODSTOCK,

        Plaintiff,

v.

DIRECTOR GARY GOLDER,
WARDEN SUSAN JONES, and
INVESTIGATOR RICHARD WREN,

        Defendants.
_____

              **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on Defendants' **Motion to Dismiss the Complaint**

[Docket No. 34; Filed June 15, 2010] (the "Motion to Dismiss").[1]  Plaintiff, who is proceeding

*pro se*, filed a Response [Docket No. 42] in opposition to the Motion to Dismiss on July 9,

2010.  Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C, the Motion to

Dismiss has been referred to this Court for a recommendation regarding disposition.  The

Court has reviewed the Motion to Dismiss [#34], Plaintiff's Response [#42], the entire case

file, and the applicable law, and is sufficiently advised in the premises. For the reasons set

forth below, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED.**

                              **I. Summary of the Case**

_____

        [1] The Motion to Dismiss was filed by Defendants Jones and Wren.  Defendant Golder
joined in the Motion to Dismiss on August 30, 2010. *Joinder in the Motion to Dismiss Complaint*
[Docket No. 51].

-1-

Plaintiff is an inmate at the Colorado Department of Corrections ("CDOC") San Carlos Correctional Facility ("San Carlos").   On February 18, 2010, Plaintiff filed a Complaint [Docket No. 3] pursuant to 42 U.S.C. § 1983 in which he alleges that the rights guaranteed to him by the Eighth and Fourteenth Amendments to the United States Constitution, the Prison Rape Elimination Act ("PREA"),  the Civil Rights of Institutionalized Persons Act ("CRIPA"), and the Americans with Disabilities Act ("ADA") were violated by Defendants.  Plaintiff alleges that Defendants violated his rights by (1) failing to conduct a thorough investigation after he complained to them that he was "beaten, extorted, and sexually assaulted" by other inmates, and (2) failing to provide "rape counselling [sic]" and post-sexual assault medical treatment.   *Complaint* [#3] at 3.   Plaintiff asserts that he "constantly feels paranoid, ashamed, humiliated, and embarrassed" as a result of Defendants' alleged omissions.   *Id.* at 4.   Plaintiff further asserts that if he had been provided with rape counseling and proper medical treatment, he "would not have suffered as much as he did."  *Id.*

Plaintiff alleges the following facts as the basis for his claims.  In September  2007, Plaintiff "mailed a letter" to Defendant Golder ("Golder") stating that he "had been beaten, extorted, and sexually assaulted by inmates" while he was incarcerated in an unspecified "CDOC Prison."[2]  *Id.*  On August 10, 2007, Golder received Plaintiff's letter and "forwarded" it to Defendant Jones ("Jones").  *Id.*  On or about October 22, 2007, Jones "forwarded" Plaintiff's letter to Defendant Wren ("Wren") for the purpose of "investigation."  *Id.*  Wren

---

[2] In his Complaint, Plaintiff does not specifically allege when and where the sexual assault occurred. He provides no details of the assault, and he does not allege that his letter to Golder contained details of the assault. Plaintiff has not provided a copy of the letter in support of his Complaint.

allegedly did not conduct a "thorough . . . investigation" into the events described in the letter.  *Id.*  To Plaintiff's knowledge, Wren may not have investigated at all.  *Id.*

At some point after he was allegedly sexually assaulted, Plaintiff filed "multiple grievances" in which he requested rape counseling and unspecified medical treatment.[3] *Id.* at 4.  Plaintiff asserts that because Defendants inadequately investigated his complaint of sexual assault and failed to provide him with counseling and medical treatment, his "trust and confidence in the system" was so damaged that he "attempted suicide several times," resulting in "severe bodily harm."  *Id.*  Plaintiff concludes that Defendants' alleged omissions have caused and continue to cause him to suffer "mental, emotional, and physical trauma."  *Id.* at 13.  Plaintiff seeks relief in the form of both compensatory and punitive damages from each Defendant.  *Id.*  Plaintiff does not seek injunctive relief.  *See id.*

The Motion to Dismiss [#34] seeks dismissal of Plaintiff's Complaint [#3] pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Defendants contend that dismissal is appropriate for the following reasons: (1) they are immune from liability for damages in their official capacities; (2) Plaintiff failed to state an Eighth Amendment claim against them; (3) Plaintiff failed to state a Fourteenth Amendment claim against them; (4) Plaintiff has no right of action under PREA; (5) Plaintiff has no right of action under CRIPA; (6) Plaintiff failed to state an ADA claim against them; and (7) they are entitled to qualified immunity in their individual capacities.

---

[3] Plaintiff did not attach the grievances he allegedly filed to his Complaint.  Plaintiff does not specify what he requested in his grievances, against whom the grievances were filed, or how the grievances were resolved.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. V. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003.  With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56.  *Id.*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted.").  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

When considering Plaintiff's Complaint [#3] and Response [#42], the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the

Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional

factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on

[his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*,

935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that

govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  Analysis

Defendants mount a facial attack on Plaintiff's Complaint [#3] pursuant to Fed. R.

Civ. P. 12(b)(1) and (b)(6).  Accordingly, the Court accepts the facts alleged in the

Complaint as true for the purpose of resolving the Motion to Dismiss [#34].  *See Holt*, 46

F.3d at 1002; *Mobley*, 40 F.3d at 340; *Motion to Dismiss* [#34] at 3 (stating that the Court

"must accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in [Plaintiff's] favor").  Defendants contend that the Complaint should

be dismissed because (A) the Court lacks subject-matter jurisdiction to adjudicate Plaintiff's

claims against them in their official capacities, and (B) Plaintiff's remaining claims are not

facially plausible.  The Court addresses Defendants' contentions in turn.

### A.    Lack of Subject-Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants contend that the doctrine of

sovereign immunity bars the Court from exercising subject-matter jurisdiction over Plaintiff's

claims against them in their official capacities.  *Motion to Dismiss* [#34] at 3-4; *see*

*Complaint* [#3] at 2 (alleging that each Defendant was "acting under color of state law" at

the time of the alleged conduct giving rise to Plaintiff's claims). The Court agrees.

"Suits against state officials in their official capacity should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (State officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983.).  The doctrine of sovereign immunity bars "a citizen from suing his own State under the federal-question head of [subject-matter] jurisdiction." *Alden v. Maine*, 527 U.S. 706, 727 (1999) (citing *Hans v. Louisiana*, 134 U.S. 1, 14-15 (1890)); *see generally id.* at 728 (noting that "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself" (citations omitted)).  The doctrine applies whether the relief sought is legal or equitable, *Papasan v. Allain*, 478 U.S. 265, 276 (1986), and it "confers total immunity from suit, not merely a defense to liability," *Ambus v. Granit Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993).  Accordingly, the Court lacks subject-matter jurisdiction to adjudicate an action brought by a citizen of Colorado against the state of Colorado, its agencies, or its officials in their official capacity.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  However, the doctrine of sovereign immunity does not bar "a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law."  *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1980)).

In this case, Plaintiff has invoked the Court's subject-matter jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 and requested relief in the form of damages. *Complaint* [#3] at 13.  Plaintiff does not seek injunctive relief.  *See id.* at 13.  The doctrine of sovereign immunity applies to 42 U.S.C. § 1983 actions.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  Thus, to the extent that Plaintiff requests damages from Defendants in their official capacities, his claims are barred.  Because Plaintiff only seeks damages – and not

injunctive relief – the Court recommends that his claims against Defendants in their official capacities be dismissed without prejudice.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

## B.    Facial Plausibility of Plaintiff's Claims

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants contend that Plaintiff  has failed to state any claims against them in their individual capacities.  *Motion to Dismiss* [#34] at 1.  The Court addresses Defendants' contention with regard to each of Plaintiff's claims below.

### (1)    Plaintiff's Eighth Amendment Claim

Defendants contend that Plaintiff's Complaint [#3] fails to state a claim that they violated the Eighth Amendment.  *Id.* at 4.  They argue that Plaintiff's allegation that they failed to "affirmatively" offer or provide adequate rape counseling and medical treatment does not amount to "deliberate indifference in violation of the Eighth Amendment."  *Id.* at 5.

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104 (quoting *Gregg*, 428 U.S. at 173).  To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently

-8-

serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety," *id.* at 837. "A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)). A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he actually drew that inference. *Farmer*, 511 U.S. at 837.

In this case, Plaintiff does not claim that Defendants failed to protect him from the alleged sexual assault. *See Complaint* [#3] at 5. Nor does Plaintiff allege that Defendants' conduct has placed him at risk of a future assault. *See id.* Plaintiff instead alleges that Defendants' were deliberately indifferent to his need for rape counseling and medical treatment after the alleged sexual assault. *Id.* at 4. The Court considers Plaintiff's Eighth Amendment claim against each Defendant in turn.

### a.     Defendants Golder and Jones

The Court finds that Plaintiff has failed to state an Eighth Amendment claim against Golder and Jones. Golder is the Director of Prison Operations for CDOC. *Complaint* [#3] at 2. Jones is the Warden at San Carlos. *Id.* Plaintiff alleges that he "mailed a letter" to Golder in which he stated that he had been sexually assaulted by inmates while incarcerated at a CDOC Prison. *Complaint* [#3] at 3. Golder then allegedly notified Jones of the sexual assault complaint by "forwarding" him the letter. *Id.* Golder and Jones' failure to offer or provide Plaintiff with rape counseling and medical treatment after receiving the

letter is the entire basis for Plaintiff's Eighth Amendment claim against them. *Id.*

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).   A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).   Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by his subordinates. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("A defendant cannot be liable under a *respondeat superior* theory in a section 1983 case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979))); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

Courts have explained that a defendant in a supervisory position is personally involved in an alleged constitutional violation committed by his subordinates in two situations.   First, the supervisor is personally involved when he personally directs his subordinates to take the action resulting in the alleged constitutional violation. *Woodward*

*v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).   Second, the supervisor is personally involved when he has actual knowledge that his subordinates are committing the alleged constitutional violation and he acquiesces in its commission.  *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (Supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence."));  *see also id.* at 1399 n.11 (To show an affirmative link between the defendant supervisor's conduct and unconstitutional behavior by his subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior.").   The Court of Appeals for the Tenth Circuit has explained personal involvement by knowing acquiescence as follows: "In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior."  *Serna*, 455 F.3d at 1151.

The Supreme Court has recently called into question the notion of personal involvement by knowing acquiescence.  In *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, the Court suggested that the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates does not establish that he was personally involved in the violation.   In *Iqbal*, the Court considered a federal detainee's claim that his designation as "a person of high interest" was the result of unconstitutional discrimination on the basis of his race, religion, or national origin.  *Id.* at 1944.  The detainee asserted his discrimination claim against, *inter alios*, the Attorney General of the United States and the Director of the Federal Bureau of Investigation (FBI).  *Id.*  He argued that these senior officials established the policy and procedures implemented by the prison officials who actually made the allegedly discriminatory designation.  *Id.* ("The pleading names [former

Attorney General] Ashcroft as the 'principal architect' of the policy, and identifies [Director

of the FBI] Mueller as 'instrumental in its adoption, promulgation, and implementation.'"

(citations omitted)).  The Supreme Court held as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners
> can be liable for "knowledge and acquiescence in their subordinates' use of
> discriminatory criteria to make classification decisions among detainees."
> That is to say, respondent believes a supervisor's mere knowledge of his
> subordinate's discriminatory purpose amounts to the supervisor's violating
> the Constitution.  We reject this argument.  Respondent's conception of
> "supervisory liability" is inconsistent with his accurate stipulation that
> petitioners may not be held accountable for the misdeeds of their agents.  In
> a § 1983 suit or a *Bivens* action–where masters do not answer for the torts
> of their servants–the term "supervisory liability" is a misnomer.  Absent
> vicarious liability, each Government official, his or her title notwithstanding,
> is only liable for his or her own misconduct.  In the context of determining
> whether there is a violation of clearly established right to overcome qualified
> immunity, purpose rather than knowledge is required to impose *Bivens*
> liability on the subordinate for unconstitutional discrimination; the same holds
> true for an official charged with violations arising from his or her
> superintendent responsibilities.

*Id.* at 1949.

Iqbal has been interpreted by at least two Courts of Appeals as narrowing the scope

of what constitutes "personal involvement" by a supervisor in an alleged constitutional

violation committed by his subordinates:

> [G]iven a recent Supreme Court pronouncement, the basic concept of § 1983
> . . . supervisory liability itself may no longer be tenable.  *See Iqbal*, 129 S. Ct.
> at 1949 ("In a § 1983 suit or a *Bivens* action–where masters do not answer
> for the torts of their servants–the term 'supervisory liability' is a misnomer.").
> After *Iqbal*, circuits that had held supervisors liable when they knew of and
> acquiesced in the unconstitutional conduct of subordinates have expressed
> some doubt over the continuing validity of even that limited form of liability.
> *See Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5
> (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir.
> 2009).

*Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010).  Accordingly, to establish

that a defendant in a supervisory position was personally involved in an alleged constitutional violation committed by his subordinates, a plaintiff must show that the defendant did more than simply acquiesce in the violation.[4]

In this case, Plaintiff has failed to allege any personal involvement by Golder and Jones in failing to offer or provide him with rape counseling and medical treatment. Golder and Jones are supervisory CDOC officials, and they are not involved in the day-to-day decision making regarding management of individual prisoners. Plaintiff does not allege that Golder or Jones "personally direct[ed]" their subordinates to ignore his medical needs or deny him rape counseling and medical treatment. *Woodward*, 977 F.2d at 1400. Plaintiff also does not  allege that Golder or Jones had "actual knowledge" that their subordinates were not offering or providing him with proper post-sexual assault care. *Id.* Plaintiff's Complaint alleges only that Golder and Jones had knowledge that Plaintiff was sexually assaulted. *Complaint* [#3] at 3. Plaintiff does not allege that his letter to Golder explained that prison staff were not providing adequate post-assault care. *See supra* note 2 (noting that Plaintiff did not attach a copy of his letter to the Complaint). In short, Plaintiff failed to state that Golder or Jones had actual knowledge that he was not receiving rape counseling and proper medical treatment. *See Complaint* [#3] at 3.

Moreover, even if the Court assumes that Golder and Jones had knowledge of the

---

[4] The Courts of Appeals have not provided clear guidance regarding precisely what a plaintiff must show to demonstrate more than mere acquiescence by the defendant. But *Iqbal* and *Serna* indicate that the defendant's state of mind is the linchpin of the analysis.  In *Iqbal*, the Supreme Court suggested that a defendant who acquiesces in a constitutional violation committed by his subordinates is personally involved in the violation only if his acquiescence was motivated by a "purpose" to allow or further the violation. *See* 129 S. Ct. at 1949. In *Serna*, the Court of Appeals for the Tenth Circuit suggested that a defendant supervisor who acquiesces in a constitutional violation is personally involved in that violation only if he shares the same "state of mind" with his subordinates who actually commit the violation. *See* 455 F.3d at 1151.

assault and knowledge that Plaintiff was not receiving rape counseling and medical treatment, they were still not personally involved in any Eighth Amendment violation that may have resulted.  *See Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 838, 843 (10th Cir. 2004) ("Copying [the prison warden] with correspondence outlining [plaintiff's] complaints about medical care, without more, does not sufficiently implicate the warden under § 1983."); *accord Crowder v. Lash*, 687 F.2d 966, 1005-06 (7th Cir. 1982) (A Commissioner of Corrections who has been informed by plaintiff both personally and by letter of alleged constitutional violations committed by prison officers was not personally involved in the violations because to find otherwise "would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from any constitutional violation occurring at any jail within that Commissioner's jurisdiction. . . . [S]uch a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action.").  The Court concludes that Plaintiff has failed to state a claim of deliberate indifference against Golder and Jones because he has not alleged personal direction or actual knowledge and acquiescence by either of them.  *Woodward*, 977 F.2d at 1400.  Because Golder and Jones are supervisory officials and Plaintiff has not alleged any facts that indicate that it might be possible for him to show personal involvement by either of them in the alleged Eighth Amendment violation if he were given leave to amend his Complaint, the Court recommends that Plaintiff's claim against Golder and Jones be dismissed with prejudice.[5]

---

[5]The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial."  *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum*

### b.      Defendant Wren

Plaintiff alleges that Wren is a CDOC Investigator whose duties include investigating inmates' complaints of sexual assault. *Complaint* [#3] at 5 ("As a CID Investigator, Wren has a duty to thoroughly investigate every claim of prison rape."). Plaintiff further alleges that Wren failed to "thoroughly investigate" his complaint of sexual assault raised in the September 2007 letter originally addressed to Golder. *Id.* To support this allegation, Plaintiff states that Wren "did not talk" to him during the course of whatever investigation may have occurred. *Id.*

Plaintiff also alleges that, as part of his investigatory responsibilities, Wren had "a duty to at least offer some type of rape counselling [sic] and/or medical treatment" to inmate sexual assault victims. *Id.* Plaintiff states that "no rape counselling [sic] or medical treatment was ever given or offered" to him. *Id.* The alleged inadequacy of Wren's investigation and the fact that Plaintiff was not "given or offered" counseling and medical

---

*Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. Sept. 9, 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))). Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile. *See, e.g., Arocho v. Nafziger*, 367 F. App'x at 955 (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)); *but see Gee v. Pacheco*, __ F.3d __, 2010 WL 4909644, at *5 (10th Cir. Oct. 26, 2010) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

treatment are the entire basis for Plaintiff's Eighth Amendment claim against Wren.

The Court finds that Plaintiff has failed to allege facts that plausibly give rise to an inference that Wren knew of and consciously disregarded an excessive risk to his (Plaintiff's) health and safety. *See Farmer*, 511 U.S. at 837. First, Wren's failure to investigate Plaintiff's letter to an extent sufficient to satisfy Plaintiff is not a constitutional violation. *Moore v. Honeycutt*, No. 09-3067-SAC, 2009 WL 1033760, at *2 (D. Kan Apr. 17, 2009) (stating that "dissatisfaction with [defendant's] investigation" of reported rape by a fellow inmate does not state an Eighth Amendment violation). Second, Plaintiff fails to allege that Wren was deliberately indifferent to his serious medical needs. As an initial matter, Plaintiff does not allege a *specific* serious medical need resulting from the alleged sexual assault. *See Complaint* [#3] at 3. He has provided no details of the alleged assault, and he has not described any injuries that resulted from it. *Id.* Accordingly, Plaintiff has not adequately pled the existence of a sufficiently serious medical need.

Moreover, even if the Court assumes that Plaintiff had a sufficiently serious medical need, the Complaint still does not state a claim against Wren. Plaintiff does not clearly allege that Wren was aware of his serious medical need. Instead, Plaintiff alleges only that the September 2007 letter was "forwarded" to Wren. *Id.* ("[O]n or around October 22, 2007, Jones forwarded [Plaintiff]'s letter to Investigator Wren. It is not known when Wren received the letter."). Further, Plaintiff acknowledges that he never spoke to Wren. *Id.* at 5. Because Plaintiff has not provided the letter or stated its contents, he has failed to adequately allege that Wren was aware that he had a serious medical need.

The Court concludes that Plaintiff has not pled a viable deliberate indifference claim against Wren. However, Plaintiff may be able to correct his pleading deficiencies by

attaching the September 2007 letter to Golder, explaining its contents, or clearly describing his serious medical need and clearly alleging that Wren knew of it.  The Court therefore cannot find that allowing Plaintiff to amend his Complaint to attempt to state a claim against Wren would be futile.   Accordingly, the Court recommends that Plaintiff's Eighth Amendment claim against Wren be dismissed without prejudice.  *See supra* note 5.

### (2) Plaintiff's Fourteenth Amendment Claim

Defendants contend that Plaintiff's Complaint [#3] fails to state a claim that they violated the Fourteenth Amendment.  *Motion to Dismiss* [#34] at 6.   After reviewing the Complaint, the Court finds that Plaintiff's Fourteenth Amendment claim consists wholly of allegations that are identical to those stated in his Eighth Amendment claim.  *Complaint* [#3] at 7.   Even though Plaintiff has styled his second claim as a Fourteenth Amendment violation, the Court is not rigidly constrained by the labels Plaintiff attaches to his claims.  *See Castro v. United States*, 540 U.S. 375, 381 (2003) (The Court may "ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category.").   Instead, the Court should interpret Plaintiff's Complaint to attempt "to create a better correspondence between the substance of [his claims] and the underlying legal basis."  *Id.*

Although Defendants analyzed Plaintiff's second claim under the framework of substantive due process, *see Motion to Dismiss* [#34] at 7, such analysis is disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Because Plaintiff's second claim is simply an exact restatement of his Eighth Amendment claim under a "14th Amendment Violation" heading, the Court finds that the claim should be dismissed for the same reasons set forth

above in Part III.B(1). Accordingly, the Court recommends that Plaintiff's second claim against Defendants be dismissed with prejudice.

### (3)   Plaintiff's Prison Rape Elimination Act (PREA) Claim

Defendants contend that Plaintiff's Complaint [#3] fails to state a claim against them pursuant to PREA, 42 U.S.C. § 15601, because PREA does not confer a private right of action on individuals. *Motion to Dismiss* [#34] at 9. The Court agrees.

"PREA provides no private right of action." *Nasious v. City and County of Denver*, No. 08-cv-00275-ZLW-KMT, 2010 WL 1347731, at *2 (D. Colo. Mar. 31, 2010). PREA was enacted to "address the problem of rape in prison, authorize[] grant money, and create[] a commission to study the issue." *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008). It "does not grant prisoners any specific rights." *Id.* Without "an unambiguous intent to confer individual rights, such as a right to sue, courts will not imply such a right" in a statute. *Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) (internal quotation marks omitted)). Accordingly, the Court recommends that Plaintiff's PREA claim against Defendants be dismissed with prejudice.

### (4)   Plaintiff's Civil Rights of Institutionalized Persons Act (CRIPA) Claim

Defendants contend that Plaintiff's Complaint [#3] fails to state a claim that they violated CRIPA, 42 U.S.C. § 1997. *Motion to Dismiss* [#34] at 10. They argue that Plaintiff does not have a private right of action under CRIPA. *Id.* Again, the Court agrees.

CRIPA confers on the Attorney General the authority "to initiate or intervene in a civil action on behalf of state institutionalized persons who are subject to egregious or flagrant conditions which deprive them of their rights." *Callahan v. Southwestern Med. Ctr.*, No.

CIV-03-1434-F, 2005 WL 1238770, at *6 (W.D. Okla. Apr. 29, 2005), *aff'd*, 2005 WL 1656917 (W.D. Okla. July 7, 2005) (internal quotation marks omitted).  However, CRIPA "does not provide for an individual right of action."  *Id.*; *see also Cooper v. Sumner*, 672 F. Supp 1361 (D. Nev. 1987); 42 U.S.C. § 1997(a)(c).  Accordingly, the Court recommends that Plaintiff's CRIPA claim against Defendants be dismissed with prejudice.

### (5)   Plaintiff's Americans with Disabilities Act (ADA) Claim

Defendants contend that Plaintiff's Complaint [#3] fails to state a claim against them pursuant to ADA, 42 U.S.C. § 12132, because Plaintiff failed to allege that "he suffers from a qualified disability . . . [and] that [he] has been discriminated against" based on that disability.  *Motion to Dismiss* [#34]  at 12.

The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (2006).  "Qualified individual with a disability" is defined as "an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  *Id.* § 12131(2).  "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  *Id.* § 12102(1).  In order to establish a 42 U.S.C. § 12132 violation, Plaintiff must prove "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs or activities . . . ; and (3) that such exclusion, denial of benefits, or discrimination, was by reason of [his] disability."  *Tyler v. City of Manhattan*,

849 F. Supp. 1429, 1439 (D. Kan. 1994); *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) ("This general standard, which closely tracks the statute's language, is plainly correct."). Thus, to prove that Defendants violated ADA, Plaintiff must first show that he "ha[s] a disability." 42 U.S.C. 12132; *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1161 (10th Cir. 2006).

In his Complaint, Plaintiff does not allege that he suffers from any disability. *See Complaint* [#3] at 10. He states no "physical or mental impairment that substantially limits [a] . . . major life activity," he does not claim to have "a record of such impairment," and he does not claim to have been "regarded as having" a disability. 42 U.S.C. § 12102(1). Because Plaintiff has not alleged any facts that indicate that it might be possible for him to show that he has a disability within the meaning of ADA if he were given leave to amend his Complaint, the Court recommends that Plaintiff's ADA claims against Defendants be dismissed with prejudice. *See supra* note 5.

## IV.  Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' **Motion to Dismiss** [#34] be **GRANTED**. Accordingly,

I FURTHER **RECOMMEND** that Plaintiff's claims against all Defendants in their official capacities be **DISMISSED without prejudice**.

I FURTHER **RECOMMEND** that Plaintiff's Eighth Amendment claim against Defendant Wren be **DISMISSED without prejudice**.

I FURTHER **RECOMMEND** that all other claims asserted in Plaintiff's Complaint [#3] be **DISMISSED with prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: February 7, 2011 at Denver, Colorado.

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge